EAST v. EAST.

Opinion delivered April 4, 1921.

1. DIVORCE—PAYMENT OF ALIMONY.—Where a decree of divorce ordered the husband to pay a certain amount as alimony to the wife, and the husband, in a proceeding to compel performance of such order, admitted that he had sufficient funds at the time of the decree, it devolved upon him to account for them, and the chancellor was not bound to accept as true his unsupported statement that the funds had been stolen from him.

2. DIVORCE—ENFORCEMENT OF ALIMONY DECREE.—While the common-law writ of *ne exeat* has been abolished, Crawford & Moses' Digest, §§ 3506-9, provide adequate remedy for the enforcement of decrees for alimony and maintenance.

3. DIVORCE—ALIMONY—IMPRISONMENT.—Imprisonment of a divorced husband for failure to pay alimony is justified only on the ground of wilful disobedience to the orders of the court, and as soon as it is made to appear that he is unable to comply with such orders he should be discharged.

Appeal from Lawrence Chancery Court, Eastern District; *Lyman F. Reeder*, Chancellor; affirmed.

*Smith & Gibson,* for appellant.

The evidence is undisputed that appellant is unable to comply with the order of court and he should be discharged. 81 Ark. 504; 9 A. L. R., *Snook* v. *Snook.* Appellant has neither the means nor ability to comply with the order of court, and the chancellor should have ordered his discharge.

*W. A. Cunningham,* for appellee.

The evidence as a whole shows that the court was fully justified in disbelieving appellant's story about losing the money, and the action of the chancellor was right.

McCULLOCH, C. J. Appellant R. A. East and appellee Sula East were formerly husband and wife, but were divorced by decree of the chancery court of Lawrence County, rendered in January, 1920, in an action instituted by appellee against appellant on the ground of cruel treatment. There were four living children of these parties, the oldest one being eighteen years of age and the youngest four years of age, and in the decree the custody of each of the children was awarded to appellee, and the court also decreed to appellee the payment of the sum of $1,150 by appellant as alimony out of funds which he then had in bank. Certain other items of personal property were also decreed to appellee.

The decree for alimony was pursuant to a written stipulation of the parties. Instead of paying over the money to appellee in accordance with the decree of the court, appellant drew the money out of the bank and, taking his youngest child with him, he left Lawrence County. He went to Heber Springs, and stayed there awhile, and then to Hot Springs, Arkansas, and afterward went to Springfield, Missouri.

In April, 1920, appellee filed in the chancery court of Lawrence County her petition in the nature of a prayer for a writ of *ne exeat* to cause appellant's arrest and compel him to comply with the decree of the court. Appellant was arrested under the writ, and, failing to give bond as directed by the court, he was incarcerated in jail

and remained there for eight weeks up until the trial of the present proceedings below. Appellant filed a petition for modification of the order committing him to jail, and alleged in the petition that he was unable to comply with the order of the court and asked to be discharged. This petition was heard by the chancery court, and a decree was entered denying the relief prayed for, and an appeal has been prosecuted to this court.

On the trial of the issues below appellant was introduced as a witness in his own behalf and undertook to give an account of the loss of the money he had on hand at the time the decree against him was rendered. He claimed that the money had been partly lost and partly spent, and was all gone at the time he was arrested, except the sum of $300 one-half of which he had since spent in expenses of this litigation, and the remaining $150 he tendered to appellee's counsel in open court, and that sum was accepted by counsel. He testified that in November or December, 1919, he had between $2,500 and $3,000 in the Bank of Black Rock at Black Rock, Arkansas, and that he drew it out of the bank, and that he left Walnut Ridge and took the youngest boy with him and went to Heber Springs. He stated about being sick there and the amount of money he spent on himself and on the child, and went from there to Hot Springs for treatment, and he stated the amount of the expenses of that trip. He testified then that he went from there to Springfield, Missouri, and that the sum of $1,500 was stolen from his pocket while he was in a large gathering of people at a show or entertainment of some kind. He testified also that he gave three of the older children $750, and placed it in the bank at Black Rock and that he gave another of the children $300, but he got that back from the child, and this was the sum out of which he paid appellee's counsel the sum of $150.

Appellant's account of the loss of $1,500 is not convincing, and we can not say that the testimony does not support the chancellor's conclusion that appellant had not lost the money, but still had it in his possession. Ap-

pellant admitted that he had the money in his posses-
sion at the time of the decree, and it devolved upon him
to account for it, and the chancellor was not bound to
accept as true his unsupported statement that it had
been stolen from him. That being true, the chancellor
was justified in refusing to discharge him from custody
without producing the money and paying it over in ac-
cordance with the previous orders of the court.

Under our statutes the common law practice of is-
suing writs of *ne exeat* is abolished, but the statutes pro-
vide adequate remedy for the enforcement of decrees
for alimony and maintenance in divorce cases. Craw-
ford & Moses' Digest, sections 3506, 3509. Those stat-
utes authorize imprisonment, both as punishment for
refusal to obey the orders of the court and to compel
obedience of such orders. But imprisonment is, as was
said by Judge RIDDICK, speaking for the court in *Ex parte
Caple,* 81 Ark. 504, "only justified on the ground of wil-
ful disobedience to the orders of the court, and, so soon
as it is made to appear that the defendant is unable to
comply with the orders of the court, he should be dis-
charged." The imprisonment can not be made per-
petual for recalcitrancy; and when it becomes manifest
that further punishment will not compel obedience, then
it is the duty of the court to refrain from further pun-
ishment, otherwise it would convert the exercise of the
court's power into an instrument of imprisonment for
debt or would constitute the imposition of unusual and
cruel punishment. The court found, however, upon
what appears to be sufficient evidence that appellant had
not spent the money, that it was still in his possession
and unacounted for, and the court was justified in as-
suming that appellant could be compelled by further pun-
ishment to produce the money. We cannot say, there-
fore, that the conclusion of the court was unsupported
by the evidence or that there was an abuse of the court's
power.

The decree is therefore affirmed.